UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRISTYN SAKELARIS, for herself and as parent and next friend of BB, a minor and as assignee of the estate of Aaron Benton,<br><br>    Plaintiff,<br><br>    v.<br><br>GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,<br><br>    Defendant. | No. 21 C 05317<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Kristyn Sakelaris, on behalf of herself and her minor son, BB, and as assignee of the estate of Aaron Benton, filed suit against Guardian Life Insurance Company of America to recover the death benefit under a life insurance policy on the life of Sakelaris's ex-husband, Aaron Benton.[1] Guardian moved to dismiss the breach of contract and estoppel claims against it. Plaintiff has voluntarily withdrawn the estoppel claim, and the Court now grants Guardian's motion and dismisses the complaint with prejudice.

**Background**

In October 2010, Benton purchased a life insurance policy through Guardian, with a death benefit of $500,000 ("the Policy"). The Policy was reissued in 2011 with

---

[1] Plaintiff also asserted a claim for professional negligence against The Pietsch Financial Group, Inc., which the Court dismissed in a prior order. R. 22.

1

a death benefit of $1,000,000. Benton and Sakelaris divorced on February 8, 2019 and in accordance with their Martial Settlement Agreement, Benton named Sakelaris as the beneficiary of the Policy for the benefit of their son, BB. Benton made all premium payments on the Policy through the end of 2018. On March 13, 2019, Guardian sent a letter to Benton notifying him that the next premium of $468.65 was due April 5, 2019. However, Guardian did not receive payment by that date.

On April 21, 2019, Guardian notified Benton that the premium was past due. The Policy lapsed on May 6 due to non-payment and expiration of the Policy's 31-day grace period. Guardian sent Benton a letter notifying him of the termination on June 5, 2019. The letter also provided for Benton's right to request reinstatement of the Policy subject to its terms. The reinstatement provision in the Policy reads:

> This policy may be eligible for reinstatement at any time during the insured's lifetime before the final expiry date and within 3 years after the date of the default. The reinstatement will not take effect until all the requirements for reinstatement have been satisfied. The requirements for reinstatement are:
>
> - written application for reinstatement received at Guardian's home office;
> - evidence of insurability satisfactory to Guardian;
> - payment of any overdue premiums, with 6% interest compounded yearly.

R. 1-1, Ex. A, at 8.

In August 2019, Benton contacted Guardian about reinstating his Policy. On September 27, 2019, Benton sent Guardian his application for reinstatement, including a check for the reinstatement premium in the amount of $477.84. According to Guardian, the application was incomplete in that it failed to fully answer several health questions material to Guardian's evaluation of his insurability, as required for

2

reinstatement.[2] Guardian therefore claims it did not approve the reinstatement application. Guardian sent a letter to Benton informing him that his application was incomplete and requesting that he provide additional information. Notwithstanding its rejection of Benton's application, Guardian cashed the reinstatement premium check on October 3, 2019.

Benton died on December 23, 2019. After his death, Sakelaris made a claim for the $1,000,000 death benefit on BB's behalf. Guardian denied the claim on January 8, 2020 and sought to refund the reinstatement premium it had retained since October 3, 2019 to Sakelaris.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

---

[2] Although the application was not attached to the complaint, the Court finds considering it on this motion to dismiss appropriate because it is referenced in the pleading and central to Plaintiff's claim. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Both parties attached duplicate copies of the application to their motion briefing.

The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Analysis

Plaintiff does not dispute that the Policy lapsed for nonpayment on May 6, 2019, or that Benton had not satisfied all the requirements for reinstatement at the time he died. Rather, Plaintiff argues that Guardian's acceptance and retention of the reinstatement premium reinstated the Policy by operation of law. Plaintiff advances two arguments to this effect, one based on a provision of the Illinois Insurance Code, and another premised on waiver.

### I. Illinois Insurance Code Section 357.5

Plaintiff first cites to 225 ILCS 5/357.5, a provision in the Illinois Insurance Code. Section 357.5 contains exemplar language for a provision that must be included in health insurance policies in Illinois, stating that if a renewal premium is missed but subsequently tendered by the insured, accepted by the insurer, and held for a certain length of time, the policy is automatically reinstated. Plaintiff argues that Guardian's retention of Benton's reinstatement premium for roughly three months

4

triggered this provision. However, Plaintiff's reliance on this statute is misplaced because it does not apply to life insurance policies.

Section 357.5 falls under Article XX of the Insurance Code. Article XX is statutorily limited to "Accident and Health Insurance" and expressly excludes life insurance. Section 352(a) states: "Nothing in [Article XX] shall apply to, or in any way affect policies or contracts described in clause (a) of Class 1 of Section 4 …." That clause refers to "Insurance on the lives of persons and every insurance appertaining thereto …." 215 ILCS 5/4(a). Plaintiff has cited to no comparable Illinois statute requiring the inclusion of similar automatic reinstatement provisions in life insurance policies.

Despite the apparent clarity in the statutes, Plaintiff relies on one Illinois decision which suggested that section 357.5 "provides for reinstatement of a lapsed life insurance policy by operation of law where the insurer has accepted a late premium payment." *Eakins v. New England Mut. Life Ins. Co.*, 473 N.E.2d 439, 443 (Ill. App. Ct. 1984). But that portion of *Eakins* was dicta and relied on another case that concerned health insurance. *See id.* (citing *McMillon v. Old Republic Life Ins. Co.*, 342 N.E.2d 246, 247-48 (Ill. App. Ct. 1975)). The *Eakins* decision has already been rejected by at least one other court in this district. *See Stewart v. Northwestern Mut. Life Ins. Co.*, 180 F. Supp. 3d 566, 574 (N.D. Ill. 2016) ("In light of the dearth of case law in accord with *Eakins* and the contradictory plain text of the Illinois Insurance Code, the Court thinks it highly likely that the Illinois Supreme Court would hold that section 357.5 does not apply to life insurance policies."). This Court

agrees that *Eakins* is contrary to the plan text of the Illinois Insurance Code and finds that it does not control here.

Because section 357.5 does not apply in this case and Benton's life insurance policy did not include any comparable automatic reinstatement provision, the Court finds the Policy was not automatically reinstated when Guardian cashed and retained the reinstatement premium he submitted with his application.

## II.    Wavier

In the alternative, Plaintiff argues that Guardian waived its "right to declare the policy lapsed" when it retained Benton's reinstatement premium for over three months. "Waiver is the voluntary and intentional relinquishment of a known right and may be express or implied." *Richelieu Foods, Inc. v. New Horizon Warehouse Distribution Ctr., Inc.*, 67 F. Supp. 3d 903, 912 (N.D. Ill. 2014). Plaintiff has cited no evidence of an express waiver by Guardian, leaving only the possibility of an implied waiver. "An implied waiver arises when conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive it." *Home Ins. Co. v. Cincinnati Ins. Co.*, 821 N.E.2d 269, 282 (Ill. 2004). "The party claiming an implied waiver has the burden of proving a clear, unequivocal, and decisive act of its opponent manifesting an intention to waive its rights." *In re Nitz*, 739 N.E.2d 93, 103 (Ill. App. Ct. 2000). As evidence of Guardian's implied waiver, Plaintiff points to Guardian's retention of the premium and its apparent failure to communicate with Benton regarding the status of his application after initially rejecting it.

The retention of the premium is not persuasive evidence of Guardian's intent to waive its right to declare the Policy lapsed. As the court observed in *Stewart*, "implied waiver of the right to declare a policy lapsed requires something more than the mere negotiation and disposition of a check." 180 F. Supp. 3d at 572. Other courts have held that when a life insurance policy contains multiple conditions precedent, including payment of a reinstatement premium, the insurer's retention of payment is insufficient to demonstrate an intent to waive the other conditions. *See, e.g.*, *Petry v. Northwestern Mut. Life Ins. Co.*, 2015 WL 1119566, at *11 (N.D. Ill. Mar. 10, 2015) (depositing premium check and mistakenly reinstating policy after insured's death did not evidence intentional waiver of requirement that insured be alive when policy is reinstated); *Nieder v. Jackson Nat'l Life Ins. Co.*, 2011 WL 3798224, at *5 (N.D. Ill. Aug. 22, 2011) (cashing of late premium check was insufficient to show policy had been reinstated where plaintiff failed to meet any of the other requirements for reinstatement under the policy). Furthermore, the reinstatement application explicitly stated that any payment made by the applicant was conditional and would remain the payor's property until Guardian approved the application and would be returned without interest if the application was not approved. Because the policy contemplated retaining payment while an application was being reviewed, Guardian's temporary retention of the reinstatement premium is not "clear, unequivocal" evidence of its intent to waive its contractual rights to consider the Policy lapsed and condition reinstatement on the submission of sufficient evidence of insurability.

Plaintiff notes that forfeiture of a life insurance policy for nonpayment of premiums is disfavored. *See Bank of Lyons v. Schultz*, 248 N.E.2d 812, 816 (Ill. App. Ct. 1969) ("[U]nless the circumstances show a clear intention to claim a forfeiture for non-payment of the premium, forfeiture will not be enforced."). Of course, this general rule is what prompts insurers to include explicit language covering the effect of nonpayment and the process for seeking reinstatement in their policies, as Guardian did here. Such clear and unambiguous contract terms control in any dispute over the contract. *See Foxfield Realty, Inc. v. Kubala*, 678 N.E.2d 1060, 1063 (Ill. App. Ct. 1997). The Court also disagrees with Plaintiff's framing of section 357.5 as a statement of Illinois's general "policy" that an insurer's retention of a late-paid premium should reinstate insurance coverage. This interpretation cannot be reconciled with the circumscribed scope of Article XX, which explicitly limits section 357.5's operation to a narrow class of insurance.

As for Guardian's alleged failure to inform Benton that more was needed from him to complete his reinstatement application, Plaintiff overlooks multiple clear statements explaining what he was required to do to reinstate the Policy. The termination notice sent to Benton informed him of his right to seek reinstatement subject to the terms of the Policy. The reinstatement application Benton submitted contained a provision that reinstatement would not be effective "unless and until" Guardian approved it. R. 13-1, at 10. Plaintiff has not identified any communication from Guardian indicating it had accepted Benton's application—the only letter

8

Benton received instead informed him that his application was incomplete.[3] Plaintiff alleges the application was "complete when submitted and all material information had been submitted as instructed by Guardian Life on September 27, 2019." R. 1-1 ¶ 16. However, this allegation is contradicted by the application itself, which is missing responses to several health-related questions. *See* R. 25-2; *see also Jackson v. City of Chicago*, 1996 WL 734701, at *4 n.7 (N.D. Ill. Dec. 18, 1996) ("[W]hen a pleading is directly at odds with a document that is properly before the court, the document controls."). The application remained in this state—incomplete and awaiting further response from Benton—on the date of Benton's death.

In summary, Guardian repeatedly insisted that reinstatement was conditioned on payment *combined* with submission of a complete application and sufficient evidence of insurability. It never told Benton his application had been accepted—in fact, it told him the opposite. Finally, when Guardian was eventually made aware of Benton's death, it immediately sought to refund the premium, an action inconsistent with a subjective intent to waive those conditions. These facts do not amount to a "clear, unequivocal" waiver.[4]

---

[3] Plaintiff claims the letter was dated September 5, 2019, which was before Benton submitted his application, and that Guardian later said the letter was simply misdated and was actually sent on December 2, 2019. Guardian's explanation makes sense—it could not have sent a letter informing Benton of the problems with his application before he submitted it.

[4] Waiver is ordinarily a question of fact that would be resolved on summary judgment or at trial. However, the Court finds that resolution of the issue is appropriate here because the key facts are either undisputed or plainly evidenced by the documents. *See Home Ins. Co.*, 821 N.E.2d at 282 ("Where there is no dispute as to the material

9

Plaintiff has not shown that Guardian intentionally waived its right to condition reinstatement of the Policy on Benton's completion of a reinstatement application, complete with sufficient evidence of insurability. The Policy therefore remained lapsed at the time Plaintiff made her claim for the death benefit. Because it "goes without saying that an insurer does not breach an insurance contract when it refuses to fulfill a claim on a lapsed policy," Plaintiff's claim must be rejected. *Stewart*, 180 F. Supp. 3d at 571.

## Conclusion

For the reasons described above, the Court grants Guardian's motion to dismiss Plaintiff's complaint [R. 12]. Because it appears the facts are not in dispute and Guardian is entitled to judgment as a matter of law, dismissal is with prejudice.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: April 27, 2022

---

facts and only one reasonable inference can be drawn, it is a question of law as to whether waiver has been established.").